# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Submitted December 4, 2007      Decided December 21, 2007

No. 05-1206

ENERGIE GROUP, LLC AND
ELAINE HITCHCOCK,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

———

Consolidated with
06-1141, 06-1429

———

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

———

*Carolyn Elefant* was on the brief for petitioners.

*John S. Moot*, General Counsel, Federal Energy
Regulatory Commission, *Robert H. Solomon*, Solicitor, and
*Carol J. Banta*, Attorney, were on the brief for respondent.

Before: HENDERSON, GARLAND and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: These consolidated petitions seek review of the Federal Energy Regulatory Commission's (FERC's) denial of preliminary permits and licenses to construct and operate hydroelectric power plants on existing dams. In each case, FERC denied the permits and then the licenses because it found the responsible individuals unfit. We considered this case on the record from the agency and on the briefs filed by the parties, pursuant to D.C. Circuit Rule 34(j). We deny the petitions.

I

A

Energie Group (Energie), L.L.C., has three shareholders, including Elaine Hitchcock, who has operated a number of hydroelectric projects in the past. This appeal involves a project she organized at Williams Dam in Indiana. FERC has already terminated an earlier project run by Ms. Hitchcock at Williams Dam for noncompliance, and its order in this case described other projects in which Ms. Hitchcock's companies violated the terms of their licenses, failed to comply with FERC orders, or operated dams improperly and unsafely. *Energie Group,* 109 F.E.R.C. ¶ 62,225 at 64,493 (2004). FERC noted Hitchcock had operated one project without a license at all, a violation culminating in a $15,000 civil penalty in 1995. *Id.*

Because the Commission found Hitchcock, "as an agent for Energie[,] responsible for the management of the company," it denied Energie's permit application. *Id.* at 64,495. Although, as a general policy, the Commission will

issue preliminary permits unless a permanent legal impediment precludes it, FERC had previously found Ms. Hitchcock unfit to hold a license, a fact that undermined any public interest in granting Energie a preliminary permit. *Energie Group*, 111 F.E.R.C. ¶ 61,072, at 61,339 (2005). Accordingly, FERC denied a request for rehearing submitted by both Energie and Ms. Hitchcock. *Id*. Energie also applied for a license while its permit application was pending, and, as anticipated, FERC denied the license application, [JA 173], and denied Energie's and Ms. Hitchcock's requests for reinstatement of the license application and for reconsideration. *Energie Group,* 116 F.E.R.C. ¶ 61,220 (2006); *Energie Group,* 117 F.E.R.C. ¶ 61,124 (2006).

Energie timely petitioned this court to review FERC's denial of a permit and denial of a license. We held the permit denial petition in abeyance, at Energie's request, until the license proceedings concluded.

B

Charles Mierek is the president and sole shareholder of Appalachian Rivers Resource Enhancement, L.L.C. (ARRE). ARRE applied for a preliminary permit to study a proposed hydroelectric project on the Cheoah River in North Carolina, and FERC denied the permit because of the noncompliance record of another company owned and controlled by Mr. Mierek. *Appalachian Rivers Res. Enhancement*, 113 F.E.R.C. ¶ 61,043 (2005). That company, Clifton Power Corporation, had committed serious compliance violations of a compliance order by failing to install and monitor necessary flow gauges. *Id*. at 61,108–09. FERC imposed a civil penalty of $15,000, which Clifton Power still has not paid. *Id*. The agency concluded Mr. Mierek "lacks the necessary fitness to receive any additional licenses"; and since FERC would not issue a license "to any entity controlled or directed by Mr. Mierek,"

the Commission denied ARRE a preliminary permit. *Id*. at 61,109.

FERC denied two further ARRE permit applications on the same grounds, *Appalachian Rivers Res. Enhancement*, 113 F.E.R.C. ¶ 62,098 (2005); *Appalachian Rivers Res. Enhancement*, 113 F.E.R.C. ¶ 62,100 (2005), and denied rehearing requested by ARRE in all three cases, in which Clifton Power and Mr. Mierek intervened. *Appalachian Rivers Res. Enhancement*, 114 F.E.R.C. ¶ 61,145 (2006).

ARRE timely petitioned this court to review the permit denials. We consolidated the petition with Energie's petitions for our consideration.

II

Because we agree FERC may consider fitness in evaluating applications for new permits and licenses under the Federal Power Act, we deny the petitions.

A

A license under the Federal Power Act confers both benefits and obligations. A licensee is authorized to operate a hydroelectric project on the terms and conditions imposed by FERC as part of the license, 16 U.S.C. § 799, and the government may sue to revoke a license for violation of its terms, § 820. To obtain a license, an applicant must submit a substantial amount of data, and the preliminary permit process helps applicants gather necessary information. § 797(f). The holder of a preliminary permit for a project has priority over other license applicants for that project. § 798.

In considering a license application, FERC assesses the public interest, broadly defined, keeping in mind that the license will allow the holder "to appropriate water resources

from the public domain." *Udall v. FPC*, 387 U.S. 428, 450 (1967). "The general fitness of the licensee-applicant" is a valid consideration, *Cooley v. FERC*, 843 F.2d 1464, 1471 (D.C. Cir. 1988); *see also Turbine Indus., Inc.*, 68 F.E.R.C. ¶ 61,127 (1994) (order to show cause why FERC should not deny applicant a license for lack of fitness), and has occasionally been dispositive. *See Carl E. Hitchcock, Elaine Hitchcock, & Energie Dev. Co.*, 69 F.E.R.C. ¶ 61,382, at 62,447 (1994) (denying license after "a long-term and pervasive pattern of … noncompliance with … the FPA ….").

In deciding whether to grant a permit, FERC also has discretion to consider the fitness of the applicant. *See* 16 U.S.C. § 800(a) (FERC "may give preference to the applicant [whose] plans … are best adapted … to the public interest" and likely to be implemented). "Under an application for a preliminary permit, the Commission is concerned with the general fitness of the applicant and with his good faith and purpose to prosecute his declared intent …." *Robert P. Wilson*, 28 F.P.C. 571, 575 (1962). Although denying a permit is a departure from FERC's general policy of granting permits whenever there is no legal bar, FERC has deviated from this policy when information already available indicates no license will result. *Symbiotics, L.L.C. v. FERC*, 110 F. App'x 76, 81 (10th Cir., Sept. 21, 2004) (known environmental problems at a site were "analogous" to foreclosure by a permanent legal barrier). That is FERC's explanation for denying permits to Energie and ARRE. 111 F.E.R.C. ¶ 61,072, at 61,339; 113 F.E.R.C. ¶ 61,043, at 61,109.

B

Petitioners also argue FERC may not look behind a corporate veil to examine the individuals who will actually operate a hydroelectric project. They cite no authority for this proposition besides Mr. Mierek's appeal of his other

company's civil penalty, *Clifton Power Corp. v. FERC*, 88 F.3d 1258 (1996).  However, *Clifton Power* is inapposite; we simply said FERC "may not base Clifton's penalty in part on the violations of another entity."  *Id*. at 1267.  By no means did we suggest FERC may not, in its discretion, base a decision on a new license on such an important factor as who will actually be running the project.  FERC has in the past looked to the individuals behind a corporation, *e.g. Turbine Indus.*, *Inc.*, 68 F.E.R.C. ¶ 61,127, at 61,611–12, and we see no reason it cannot continue to do so.

### III

Petitioners' other claims, that FERC acted arbitrarily and capriciously and infringed their due process rights, do not merit discussion.  Accordingly, the petitions are

*Denied.*